United States District Court
Southern District of Texas
**ENTERED**
June 03, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2581 |
| | § | (CRIMINAL NUMBER H-14-356-07) |
| EDWIN JASSIEL PERALTA-CASTRO | § | |

**MEMORANDUM OPINION AND ORDER**

The defendant, Edwin Jassiel Peralta-Castro, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("§ 2255 Motion") (Docket Entry No. 576) and Petitioner's Memorandum of Law and Supporting Appendix in Support of Motion to Vacate, and/or Set-Aside Conviction Pursuant to Title 28 U.S.C. § 2255 ("Memorandum of Law") (Docket Entry No. 577).[1] The government has filed United States' Response to Peralta-Castro's Motion for Relief Under 28 U.S.C. § 2255 and Motion for Judgment on the Record ("United States' Response") (Docket Entry No. 600), and Peralta-Castro has filed Peralta's Reply to the United States Response In Opposition to Title 28 U.S.C. § 2255 ("Defendant's Reply") (Docket Entry No. 605). The court has carefully reviewed all of the parties' arguments. Based on this review, the court's recollection of the

---

[1]Although a Civil Action Number has been assigned to the § 2255 Motion, all docket entries referenced are to Criminal No. H-14-356. For purposes of identification all page citations refer to the page number imprinted by the court's electronic filing system, CM/ECF.

relevant proceedings, and the application of governing legal authorities, the pending § 2255 Motion will be denied and the corresponding Civil Action No. H-18-2581 will be dismissed for the reasons explained below.

## I. Background

Peralta-Castro was charged along with several codefendants in connection with a conspiracy to possess with intent to distribute 1 kilogram or more of heroin and 50 grams or more of methamphetamine.[2] On April 7, 2016, the government filed a Superseding Information, charging Peralta-Castro with engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957.[3] Specifically, the Superseding Information charged Peralta-Castro with purchasing a 2007 Honda Pilot Sport Utility Vehicle with proceeds derived from the distribution of controlled substances in violation of 21 U.S.C. § 841(a).[4]

Peralta-Castro waived a formal indictment on the charges in the Superseding Information and entered a guilty plea on May 12, 2016, pursuant to a written Plea Agreement.[5] In exchange for his

---

[2]Superseding Indictment, Docket Entry No. 51, p. 2.

[3]Superseding Information, Docket Entry No. 276.

[4]Id.

[5]Waiver of Indictment, Docket Entry No. 285, pp. 1-2; Plea Agreement, Docket Entry No. 286, pp. 1-14.

plea, the government agreed to dismiss the drug-trafficking charges against him in the Superseding Indictment and not to oppose a decrease in sentence if he clearly accepted responsibility for his role in the drug-trafficking conspiracy.[6]

The Probation Office prepared a Presentence Investigation Report ("PSR") using the 2015 edition of the United States Sentencing Guidelines Manual.[7] The Probation Office determined that Peralta-Castro's base offense level score was 34 based on the amount of controlled substances attributable to his relevant conduct, which involved loading vehicles with narcotics in concealed compartments on multiple occasions.[8] With a one-level increase for specific offense characteristics under U.S.S.G. § 2S1.1(b)(2)(A), which applies to convictions under 18 U.S.C. § 1957, and a reduction of three levels for acceptance of responsibility, Peralta-Castro's total offense level was 32.[9] Because Peralta-Castro had no criminal history points, he faced a potential range of 121-151 months in prison under the Guidelines. Because the statute for the offense of conviction, 18 U.S.C. § 1957, had a maximum term of 10 years, the Probation Office recommended a sentence of 120 months' imprisonment.[10] The court

[6]Plea Agreement, Docket Entry No. 286, pp. 4-5.

[7]PSR, Docket Entry No. 346, p. 7 ¶ 18.

[8]Id. at 6 ¶ 12 and 7-8 ¶ 19.

[9]Id. at 8 ¶¶ 20-28.

[10]Id. at 12 ¶¶ 56-57.

denied defense counsel's objections to the PSR and sentenced Peralta-Castro to serve 120 months' imprisonment followed by a three-year term of supervised release.[11]

Peralta-Castro challenged his sentence on direct appeal, arguing that the court erred when it found him accountable for aiding and abetting a drug trafficking offense as relevant conduct and by denying him a reduction in sentence for having a mitigating role. The Fifth Circuit rejected Peralta-Castro's arguments and affirmed the sentence in an unpublished opinion. See United States v. Peralta-Castro, 699 F. App'x 407 (5th Cir. Oct. 26, 2017) (per curiam).[12] The Supreme Court denied Peralta-Castro's petition for a writ of certiorari on February 26, 2018. See Peralta-Castro v. United States, 138 S. Ct. 1179 (2018).

Peralta-Castro now seeks relief under 28 U.S.C. § 2255 arguing that he was denied effective assistance of counsel because his defense attorney failed to properly research his "sentencing exposure before advising him to plead guilty."[13] The government argues that Peralta-Castro is not entitled to relief and that the § 2255 Motion must be denied because his claims lack merit.[14]

---

[11]Sentencing Transcript, Docket Entry No. 464, p. 6; Judgment in a Criminal Case, Docket Entry No. 425, pp. 2-3.

[12]Slip Opinion in Appeal No. 16-20833, Docket Entry No. 566, pp. 1-3.

[13]§ 2255 Motion, Docket Entry No. 576, p. 4.

[14]United States' Response, Docket Entry No. 600, pp. 22-30.

## II. Standard of Review

A prisoner serving a sentence imposed by a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A prisoner seeking relief under 28 U.S.C. § 2255 "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. United States v. Frady, 102 S. Ct. 1584, 1593 (1982). After a conviction has been affirmed on appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted). For this reason, "[r]elief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

Mindful of the defendant's pro se status, the court has liberally construed his § 2255 Motion and related filings. See

Estelle v. Gamble, 97 S. Ct. 285, 292 (1976) ("[A] pro se document is to be liberally construed."); Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam) (stating that pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, a pro se petitioner's "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

## III. Discussion

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. See Yarborough v. Gentry, 124 S. Ct. 1, 4 (2003). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). A defendant asserting ineffective assistance of counsel therefore must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. Id. "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997). "A court

need not address both components of the inquiry if the defendant makes an insufficient showing on one." Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).

"The performance prong of Strickland requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citation omitted). "Therefore, courts may not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance." Carter, 131 F.3d at 463 (quoting Strickland, 104 S. Ct. at 2065-66). "Hence, there is a strong presumption that the performance 'falls within the wide range of reasonable professional assistance.'" Id. (same). The burden is on the defendant to overcome this presumption. Id.

To establish Strickland prejudice a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. The prejudice inquiry under Strickland is altered in the guilty-plea context, where the defendant bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S. Ct. 366, 370 (1985); see also Premo v. Moore, 131 S. Ct. 733, 743 (2011) (quoting Lockhart).

A habeas petitioner must "affirmatively prove prejudice." Strickland, 104 S. Ct. at 2067. Conclusory allegations are insufficient to make this showing. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009). The Supreme Court has clarified that the prejudice inquiry in the context of a guilty plea requires a case-by-case examination of the totality of the evidence against the defendant. Lee v. United States, 137 S. Ct. 1958, 1966 (2017). A reviewing court should not upset a guilty plea "solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 137 S. Ct. at 1967.

**B. The Defendant's Ineffective-Assistance Claims**

Peralta-Castro contends that his defense counsel (Adrian Almaguer) was deficient for failing to research his potential sentencing exposure under the Guidelines and the applicable statutory maximum for the charged offense, 18 U.S.C. § 1957, before advising him to plead guilty.[15] He alleges that his defense counsel "misunderstood the Guidelines and advised [him] that he faced at most 15 to 21 months in prison, and to therefore plead guilty."[16] He alleges that he was prejudiced because, but for the alleged

---

[15]Memorandum of Law, Docket Entry No. 577, p. 15.

[16]Id.

deficiency in his counsel's representation, he would have plead not guilty and insisted on a trial.[17]

As support for his claim Peralta-Castro provides his own affidavit, in which he states that defense counsel "assured" him that he "would be sentenced to 15-20 months incarceration."[18] He also points to a page from Defendant's Sentencing Memorandum, in which defense counsel argued for a Guidelines calculation that would yield a total offense level score of 14, resulting in a range of 15-21 months' imprisonment for an offender in Criminal History Category I.[19] Peralta-Castro argues that counsel's deficient

---

[17]Memorandum of Law, Docket Entry No. 577, p. 15. Peralta-Castro argues that he need not establish prejudice because he was constructively denied counsel as the result of his attorney's errors, relying on United States v. Cronic, 104 S. Ct. 2039 (1984). See Memorandum of Law, Docket Entry No. 577, pp. 19-20. He is mistaken. Prejudice is presumed under Cronic only when a defendant is completely denied counsel during a critical stage of the proceeding or counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing[.]" Id. at 2047 (emphasis added); Bell v. Cone, 122 S. Ct. 1843, 1851 (2002). The presumption of prejudice recognized in Cronic does not apply where a defendant merely complains of poor performance by his defense counsel. See United States v. Griffin, 324 F.3d 330, 364 (5th Cir. 2003) ("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the per se presumption of prejudice.") (quoting Gochicoa v. Johnson, 238 F.3d 278, 284-85 (5th Cir. 2000)). The record refutes Peralta-Castro's claim that counsel failed to subject the prosecution's case to meaningful adversarial testing; Cronic, therefore, is not applicable.

[18]Sworn Affidavit, Docket Entry No. 577, pp. 24-25.

[19]Exhibit, Docket Entry No. 577, p. 26. Peralta-Castro provides only one page and does not identify the document or provide a complete copy, but the record reflects that the page comes from Defendant's Sentencing Memorandum, see Docket Entry No. 340, p. 3, which was filed with the court on October 19, 2016, months after Peralta-Castro entered his guilty plea on May 12, 2016.

performance is further supported by the fact that several of his codefendants subsequently received much lighter sentences and by the fact that counsel raised "legally baseless" arguments that were inadequately briefed on appeal.[20]

The government argues that Peralta-Castro's sworn statements during the rearraignment proceeding refute his contention that his guilty plea was not voluntarily and knowingly made with a full understanding that he faced a 10-year maximum sentence and that his punishment would not be determined until after a PSR was prepared.[21] The transcript of the rearraignment hearing confirms that the court expressly advised Peralta-Castro that he was pleading guilty to a felony that had a maximum sentence of 10 years or 120 months in prison.[22] Peralta-Castro replied that he understood.[23] The court also advised Peralta-Castro that there had been no determination yet about what his sentence would be and that a probation officer would prepare a PSR, which he would be given an opportunity to review and submit objections.[24]

The court also expressly addressed the Sentencing Guidelines. The court explained to Peralta-Castro that "no one knows what

---

[20]Memorandum of Law, Docket Entry No. 577, pp. 15-16, 18.

[21]United States' Response, Docket Entry No. 600, p. 23.

[22]Rearraignment Transcript, Docket Entry No. 470, p. 7.

[23]Id.

[24]Id. at 8.

advisory guideline range the probation officer will recommend, or what advisory guideline range [the court] will find to be applicable, or what sentence [the court] will impose."[25] When asked if he understood, Peralta-Castro replied, "Yes."[26] The court emphasized that Peralta-Castro would be bound by his guilty plea even if the sentence imposed was greater than what his attorney or anyone else may have predicted.[27] Peralta-Castro responded that he understood.[28] The court specifically asked Peralta-Castro if his counsel had told him what sentence he would receive if he pled guilty.[29] Peralta-Castro replied, "No."[30] When the court asked if anyone else had told him what sentence he would receive if he pled guilty, Peralta-Castro again replied, "No."[31]

The court recited the statutory elements of the offense outlined in the Superseding Information and the Plea Agreement, which included a factual statement setting out Peralta-Castro's involvement in the offense.[32] The written Plea Agreement, which

---

[25] Id.

[26] Id.

[27] Id.

[28] Id. at 9.

[29] Id. at 11.

[30] Id. at 9.

[31] Id.

[32] Id. at 12-13.

also advised Peralta-Castro that the "**statutory** maximum penalty" was "imprisonment of not more than ten (10) years" for the offense found in 18 U.S.C. § 1957,[33] contains the following factual basis for the plea:

> a. In early 2013, law enforcement officials in Houston, Texas, determined that a drug trafficking organization (DTO) based in Michoacán, Mexico, was recruiting individuals to drive vehicles fit with hidden compartments filled with narcotics across the Mexican border into the Southern District of Texas. Once these vehicles entered the United States, they were driven from Texas to their ultimate destination, typically, New York. In New York, the drivers would give possession of the vehicle to a specified individual; that individual would take the vehicle for a day or two; and the vehicle would subsequently be returned to the driver. At the time of the vehicle's return, it housed United States currency in its hidden compartment as opposed to narcotics. The vehicle, complete with its cache of hidden currency, would then be driven back to Mexico.
>
> b. As this investigation progressed, several narcotics/bulk currency seizures in the Southern District of Texas were linked to this Mexican DTO. Further, a Confidential Source (CS) working with DEA officials advised that the DTO was operating a narcotics "stash house" at 14907 Leila Oaks in Houston, Texas. Via surveillance, agents determined that one of the occupants of 14907 was the defendant, **Edwin Jassiel Peralta-Castro**.
>
> c. Ultimately, DEA investigators tied **Peralta-Castro** directly to several of the vehicles utilized by the DTO to transport narcotics and/or narcotics proceeds. The first vehicle tied to **Peralta-Castro** was a Volvo observed by police on June 3, 2013, at 14907 Leila Oaks. The following day, M.S. was stopped in Beaumont, Texas, driving this Volvo.[[34]] Police ultimately searched the Volvo, locating

---

[33]Plea Agreement, Docket Entry No. 286, p. 1 ¶ 2 (emphasis in original).

[34]This Volvo was previously registered to A.O. and codefendant Christopher Clark (Clark).

approximately sixteen kilograms of methamphetamine secreted inside a hidden compartment. M.S. agreed to cooperate with officials and would have testified at trial that on June 3, 2013, she gave the Volvo to **Peralta-Castro**, who had the vehicle in his possession for several hours. **Peralta-Castro** subsequently returned the Volvo to M.S. later that evening at Whataburger, providing M.S. with travel money to go to Atlanta as well.[35] Phone tolls also confirmed cellular contact between M.S. and the cellular device of **Peralta-Castro** multiple times during this period.

d. In addition, on June 7, 2013, A.O. and co-defendant Christopher Clark were arrested in Rosenberg, Texas, when the stop of their black Dodge Journey SUV led to the recovery of ten kilograms of heroin from a hidden compartment. This Dodge Journey had also been previously observed at 14907 Leila Oaks. Agreeing to cooperate with officials and willing to testify at trial, A.O. admitted to working for the DTO for approximately three months prior to her June 7 arrest.[36] A.O. stated that she was paid $2,000 to $3,000 dollars per trip; that she made multiple trips from Mexico/the border to various locations including New York; and that on several of the trips, A.O. dropped the "stash vehicle" off with **Peralta-Castro** for a short period of time prior to leaving Houston – and upon her return. Clark confirmed A.O.'s information in an interview separately conducted that day and would likewise testify at trial that **Peralta-Castro** assisted with the pick-up/delivery of DTO vehicles. In addition, **Peralta-Castro's** cellular phone number was located in cellular telephones belonging to A.O. and Clark. Phone tolls confirmed multiple cellular contacts between these parties during this period as well.

e. Thereafter, agents received information from the CS that **Peralta-Castro** wanted to purchase another vehicle for the DTO to transport narcotics and/or bulk U.S. currency. Investigative efforts revealed that on June 20, 2013, **Peralta-Castro** purchased a Honda Pilot Sport Utility Vehicle bearing Vehicle Identification Number (VIN) 2HKYF18547H511523 from Spring Branch

[35]Peralta-Castro was captured on surveillance footage at Whataburger on the evening of June 3, 2013.

[36]"Rodolfo" (Adolfo Aguirre Roman) personally recruited A.O.

Honda[[37]] in Houston, Texas, for $14,149.68 in cash. The day after **Peralta-Castro** purchased this Honda Pilot in United States currency, the vehicle was registered to B.H. Thereafter, on July 18, 2013, B.H. was arrested at the United States Border Patrol checkpoint in Sarita, Texas. At this time, the Honda Pilot was loaded with 16 kilograms of heroin in an aftermarket compartment located under the vehicle.

f. At trial, the United States would have offered testimony from the CS who specifically would have related that **Peralta-Castro** purchased the Honda Pilot for the DTO and that **Peralta-Castro's** source of United States currency was the DTO. The United States would also have presented testimony from M.S; A.O; and Clark regarding **Peralta-Castro's** role with the load vehicles and drug/money couriers as described herein. In addition, staff from Spring Branch Honda would have testified that **Peralta-Castro** paid over $10,000 in United States currency on June 20, 2013, for the Honda Pilot ultimately titled to B.H, a drug courier. A photocopy of **Peralta-Castro's** identification, along with all other purchase documents would have been introduced. In addition, **Peralta-Castro's** tax and employment records would have been offered into evidence. From these records, the jury would have learned that **Peralta-Castro** did not legitimately earn sufficient funds from which to purchase the Honda Pilot, corroborating that the funds presented to Spring Branch Honda were derived from specified unlawful activity.[38]

Peralta-Castro acknowledged during the rearraignment hearing that he had read the Plea Agreement, that the factual statement was true, and that he did everything that was described in that statement.[39]

---

[37]Spring Branch Honda is a "financial institution" as defined by Title 31, United States Code, Section 5312(a)(2)(T).

[38]Plea Agreement, Docket Entry No. 286, pp. 7-10 (emphasis and footnotes, renumbered, in original).

[39]Rearraignment Transcript, Docket Entry No. 470, p. 13.

The Plea Agreement contained an Addendum in which defense counsel stated that he "fully and carefully" explained to Peralta-Castro the Guidelines applicable to his case and that, because the Guidelines are "only advisory," the court could sentence him "up to the maximum allowed by statute per count of conviction."[40] At the sentencing hearing, Peralta-Castro acknowledged that his attorney had reviewed the PSR with him in Spanish, including the recommended Guidelines range and statutory maximum term of imprisonment.[41] Although Peralta-Castro had ample opportunity to speak at the sentencing hearing, at no time did he indicate that he had been told he would receive a sentence of only 15-20 months or express any desire to withdraw his guilty plea and proceed to trial.[42]

"It is well established that [a defendant's] '[s]olemn declarations in open court carry a strong presumption of verity'" or truthfulness. United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001) (quoting Blackledge v. Allison, 97 S. Ct. 1621, 1629 (1977)). Courts should afford "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). The self-serving allegations in Peralta-Castro's § 2255 Motion, Memorandum of Law, and affidavit that his defense counsel told him he would receive a

---

[40]Plea Agreement — Addendum, Docket Entry No. 286, p. 13.

[41]Sentencing Transcript, Docket Entry No. 464, pp. 3-4.

[42]Id. at 4, 5.

sentence of 15-20 months is insufficient to overcome the presumption that applies to the sworn statements he made in open court, where Peralta-Castro represented that his defense counsel had made "No" such estimate.[43] See United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987) ("[S]tatements made to the court when a guilty plea is entered 'carry a strong presumption of verity,' and '[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.'") (quoting Blackledge, 97 S. Ct. at 1629).

Peralta-Castro has provided no independent support for his claim that he was misinformed by counsel about his potential sentence before his guilty plea was entered. See United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985) (to be entitled to evidentiary hearing on claim that sworn statements during the plea proceeding were false, a defendant must make "specific factual allegations supported by the affidavit of a reliable third person"). Peralta-Castro has not otherwise pointed to any contemporaneous evidence in the record showing that he had an inclination to withdraw his guilty plea and proceed to trial once his sentencing exposure was outlined in the PSR. The fact that defense counsel argued that the Guidelines range should be lower in Defendant's Sentencing Memorandum, which was filed months after the guilty plea was entered, is evidence of advocacy on

[43]Rearraignment Transcript, Docket Entry No. 470, p. 9.

Peralta-Castro's behalf, and is not proof that defense counsel gave misleading or incorrect advice about the potential sentence he would receive. Likewise, lower sentences received by less culpable codefendants in this case are not evidence of deficient performance on his counsel's part. In addition, although Peralta-Castro faults his counsel for filing an inadequate appellate brief, he does not demonstrate that he would have prevailed on appeal if his counsel had raised any other argument and, therefore, he fails to establish deficient performance or actual prejudice in that context. See Smith v. Robbins, 120 S. Ct. 746, 764 (2000) (establishing ineffective assistance by counsel requires a defendant to show that counsel unreasonably failed to raise a non-frivolous issue and that, but for this failure, he would have prevailed on appeal). Thus, Peralta-Castro has not demonstrated that his guilty plea was coerced by misinformation about his sentencing exposure.

Moreover, Peralta-Castro proposes no viable defense to the charges against him, which were supported on substantial evidence outlined in the factual basis for the Plea Agreement. Because Peralta-Castro does not dispute that the factual basis underlying his guilty plea was true, he does not otherwise establish that, but for any deficiency on his counsel's part, there was a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59; see also Lee, 137 S. Ct. at 1966 (observing as a general matter that "a defendant who has no realistic defense to a charge supported by sufficient

evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea"). Therefore, Peralta-Castro fails to demonstrate deficient performance or actual prejudice, and he fails to show that he was denied effective assistance of counsel in connection with his guilty plea or sentence. Because Peralta-Castro has not established a valid claim for relief, his § 2255 Motion will be denied.

### C. Request for an Evidentiary Hearing

Peralta-Castro requests an evidentiary hearing on his ineffective-assistance claim.[44] A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. See United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (citing United States v. Auten, 632 F.2d 478 (5th Cir. 1980)). In this case the record is sufficient to fairly dispose of the allegations made by Peralta-Castro. A district court need inquire no further on collateral review. Therefore, Peralta-Castro's request for an evidentiary hearing is **DENIED**.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of

---

[44]Defendant's Reply, Docket Entry No. 605, pp. 1-4, 6-7.

appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless the applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). This requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the defendant does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will be denied.

## V. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody filed by Edwin Jassiel Peralta-Castro (Docket Entry No. 576) is **DENIED**; and this action will be dismissed with prejudice.

2. A certificate of appealability is **DENIED**.

**The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.**

**SIGNED** at Houston, Texas, on this the 3rd day of June, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE